**KENTUCKY NEW ERA, INC., Appellant**

v.

**CITY OF HOPKINSVILLE, Kentucky, Appellee.**

No. 2012–SC–000290–DG.

Supreme Court of Kentucky.

Dec. 19, 2013.

Jon L. Fleischaker, Jeremy Stuart Rogers, Louisville, Counsel for Appellant.

Howard Douglas Willen, John Foster Cotthoff, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Concerned that the Hopkinsville Police Department might be responding inconsistently to similar criminal complaints, a writer for the Kentucky New Era, Inc., a newspaper serving Hopkinsville and the surrounding area, sought from the Hopkinsville City Clerk pursuant to the Kentucky Open Records Act (Kentucky Revised Statutes (KRS) 61.870 to 61.884, hereinafter "ORA" or "the Act") copies of arrest citations and police incident reports from January 1 through August 31, 2009

involving stalking, harassment or terroristic threatening. The City Clerk withheld some records, including those involving juveniles and open cases, and redacted from others certain types of personal data, such as, in some instances, the names, and in all instances the social security numbers, driver's license numbers, telephone numbers, and complete home addresses of victims, witnesses, and suspects. Following proceedings in circuit court, including an *in camera* review, New Era received redacted copies of all the requested records, with the only allowed redactions being social security numbers, driver's license numbers, home addresses and telephone numbers. We granted New Era's motion for discretionary review to consider its claim that in upholding these redactions, as well as the City's right to redact the names of all juveniles in the records, the Court of Appeals misapplied the Open Records Act, in particular the Act's exemption for records the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." KRS 61.878(1)(a). Convinced that the Court of Appeals correctly applied the Act's privacy exemption, we affirm its decision.

### RELEVANT FACTS

In September 2009, the New Era requested the following records from the Hopkinsville City Clerk:

All ... Hopkinsville Police Department arrest citations from Jan. 1, 2009 until Aug. 31, 2009, resulting in any of the following charges: first-degree stalking, second-degree stalking, harassing communications, harassment, first-degree terroristic threatening, second-degree terroristic threatening or third-degree terroristic threatening.... Any and all ... Hopkinsville Police Department reports from Jan. 1, 2009 until Aug. 31, 2009, which may not have resulted in arrests, reporting any threats made toward an individual or a group of individuals. This includes KYIBRS [Kentucky Incident Based Reporting System] reports and draft reports.[1]

According to New Era's brief, the newspaper wanted to analyze "various differences" in how the City's police treated stalking, harassment, and terroristic threatening complaints, and in particular hoped to understand, perhaps by interviewing the persons involved in the incidents, why the police "made arrests and pursued charges in some situations but not in others."

Less than two weeks later, the City released some 440 pages of arrest and incident records. It withheld, however, some records in their entirety, including records reflecting any involvement by a juvenile, be it as a suspect, victim, or witness, and records involving open cases. The City also made redactions from some of the records it released. Invoking the privacy exemption (the only exemption still at issue in the case before us), the City initially redacted not only the personal identification data noted above, but also such demographic data as birth date, marital status, gender, race, and ethnicity.

Dissatisfied with the City's withholdings and redactions, the newspaper, pursuant to KRS 61.880, sought review by the Attorney General. The Attorney General agreed with the newspaper that an entire record was not rendered exempt merely because it mentioned, in some capacity, a

---

1. The request was for "all unredacted (with the exception of social security number)" records within the two categories of documents. Thus, although social security numbers have been mentioned by both of the lower courts, the newspaper has never sought to obtain that information.

juvenile, and he also agreed with the newspaper that the City's privacy redactions did not comport with the Act's requirement that exemptions be applied narrowly. Rather, the Attorney General believed, the Act required that the records be released without redactions "absent a particularized showing of a heightened privacy interest in an individual record." 09–ORD–201 at 7 (citation and internal quotation marks omitted).[2]

The City thereupon initiated a KRS 61.882 action in the Christian Circuit Court. It sought, essentially, declaratory relief to the effect that its decisions to withhold and to redact records did not violate the ORA. Presented with cross-motions for summary judgment and after (on the City's motion to alter or amend) having compared *in camera* the redacted and the unredacted versions of the records, the circuit court ultimately ruled that the City's redactions of social security and driver's license numbers, of home addresses, and of telephone numbers comported with the Act. However, in the court's view, the privacy exemption did not authorize the wholesale redaction of demographic data, a ruling not challenged on appeal. Further the circuit court held that records involving juveniles, although possibly subject to privacy redactions, were not made totally exempt by the statute (KRS 610.320) which calls for the nondisclosure of a juvenile's court records.

Both sides appealed, and as noted above, the Court of Appeals upheld the City's redactions of personal identification data. The Court went a step beyond the trial court's ruling, furthermore, and held that under the privacy exemption the names of

juveniles, as well as any other information individually identifying them, could be redacted from the requested records. So ruling, the Court declined to address the City's KRS 610.320 argument to the effect that law enforcement records mentioning juveniles are exempt *in toto* from the ORA. Content, apparently, with the ability to redact the names of juveniles and their personal data, the City did not pursue its broader claim.

The newspaper, on the other hand, maintains that the Court of Appeals has made an unduly expansive reading of the privacy exemption, a reading at odds, it insists, with the ORA's terms and purposes and one in derogation of the pertinent case law. In particular, the newspaper contends that the Court of Appeals' ruling misconceives the balance to be struck under the Act between the individual's interest in privacy and the public's interest in disclosure. The newspaper also contends that what it refers to as the City's "blanket" redaction policy violates the Act's requirement that exemptions be applied only on a case-by-case basis with reference to the facts pertaining to each separate record. Because in our view the Court of Appeals (and the trial court) correctly identified and compared the individual and public interests involved, and because the City's redaction policy as modified by the courts is a reasonable response to a legitimate privacy concern, we affirm.

## ANALYSIS

**I. In Law Enforcement Records, Personal Information About Identifiable Private Individuals Is Generally Exempt From The Open Records Act.**

■ Originally enacted in 1976,[3] the ORA provides, as a general rule, that "[a]ll

---

2. The Attorney General also opined that the City could not withhold records under the law enforcement "open investigations" exception pursuant to KRS 61.878(1)(h) without a "showing of particularized harm from premature disclosure of those records by the law enforcement agency." That exception is no longer at issue, the parties having focused exclusively on the "personal privacy" exception in KRS 61.878(1)(a).

public records shall be open for inspection by any person." KRS 61.872(1).[4] This general rule, embodying the Act's basic policy of "free and open examination of public records," KRS 61.871, "is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good." *Kentucky Bd. of Examiners of Psychologists v. Courier Journal & Louisville Times Co.,* 826 S.W.2d 324, 328 (Ky.1992).

The General Assembly also recognized, however, that public dissemination of some agency information is not in the public interest. It has provided, therefore, for certain exceptions to the general rule of openness. KRS 61.878 currently excludes from the Act's application fourteen different types of records and provides that such records "shall be subject to inspection only upon order of a court of competent jurisdiction." KRS 61.878(1). To preserve the Act's presumption in favor of open examination, the General Assembly has declared that these exceptions to the rule "shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.871. Additionally, the legislature has placed the burden of proving that a record is exempt from disclosure on the agency asserting the exemption. KRS 61.882(3).

▮ Typically, the agency will attempt to carry that burden by identifying, by affidavit or otherwise, the record or information withheld, the exemption or exemptions claimed, and the reasons why the withheld information falls within the claimed exemption. The agency's explanation must be detailed enough to permit the court to assess its claim and the opposing party to challenge it. Whether the matter

---

**3.** The federal counterpart of the ORA, the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 *et seq.,* was enacted in 1966. It too creates a general rule of open access to agency records with the rule qualified by certain express exceptions. The exceptions are to be narrowly construed. *United States Dept. of State v. Ray,* 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). Since the adoption of the federal Act, every state has adopted similar legislation, and the vast majority of state open records laws follow, as does our ORA, the federal model—a general rule of openness with qualifying exceptions. Roger A. Nawadzky, *A Comparative Analysis of Public Records Statutes,* 28 Urban Lawyer 65 (1996). Given the broad statutory similarities, cases construing the federal Act often inform-whether by comparison or by contrast—state decisions construing parallel provisions. *Id.* at 66; *see, e.g., 38 Endicott Street North, LLC v. State Fire Marshal,* 163 N.H. 656, 44 A.3d 571 (2012); *Blethen Maine Newspapers, Inc. v. State,* 871 A.2d 523 (Me.2005); *Mager v. Department of State Police,* 460 Mich. 134, 595 N.W.2d 142 (1999); *People ex rel. Birkett v. City of Chicago,* 184 Ill.2d 521, 235 Ill.Dec. 435, 705 N.E.2d 48 (1998); *Hearst Corp. v. Hoppe,* 90 Wash.2d 123, 580 P.2d 246 (1978). As will be apparent below, we have considered and found pertinent to our application of the ORA's privacy exemption the United States Supreme Court's discussion of the similar provisions of the FOIA.

**4.** In pertinent part the Act defines a "public record" as "all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency." KRS 61.870(2). "Public agency" in turn means, among other things, "[e]very state or local government officer [and] [e]very state or local government department." KRS 61.870(*l*)(a)-(b). There is no dispute that the Hopkinsville Police Department is a "public agency" under the Act, or that its arrest and incident reports are "public records."

was brought directly to the trial court or was first reviewed by the Attorney General, the trial court addresses the ORA issues *de novo.* KRS 61.882(3). We review the trial court's factual findings, if any, for clear error, but our review is plenary of issues concerning the construction or application of the ORA. *Commonwealth v. Chestnut,* 250 S.W.3d 655 (Ky.2008). Because in this case the trial court entered summary judgment on agreed facts, our review is purely *de novo.*

■ The exemption at issue here, the privacy exemption, excludes from the Act's disclosure provisions "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." KRS 61.878(*l*)(a). Because the exemption applies only to "unwarranted" invasions of personal privacy and not to just any invasion, to determine whether a record was properly withheld "there is but one available mode of decision, and that is by comparative weighing of the antagonistic interests." *Bd. of Examiners,* 826 S.W.2d at 327. We must balance the interest in personal privacy the General Assembly meant to protect, on the one hand, against, on the other, the public interest in disclosure.

Turning first to the privacy side of the balance, we may note, as the United States Supreme Court has explained, that an individual's interest in personal privacy is not limited to his or her interest in keeping personal facts completely secret. " 'In an organized society, there are few facts that are not at one time or another divulged to another.' " *United States Department of*

*Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 500, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (*FLRA*).[5] The privacy interest, rather, " 'encompass[es] the individual's control of information concerning his or her person.' ... An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *Id.* at 500, 114 S.Ct. 1006 (quoting *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). An individual's interest in controlling the dissemination of personal information is clearly implicated whenever the state compels the individual to disclose such information, as the state often must do in the fulfillment of its regulatory duties, and then turns around and disseminates that information to a third party. Admittedly this interest in control of one's personal information merely for the sake of control may not be compelling with regard to information already widely disseminated, but neither is it negligible:

> The privacy exemption was "intended to cover detailed Government records on an individual which can be identified as applying to that individual.... When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy.

*United States Department of State v. The Washington Post Company,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982)

---

5. In *FLRA* the Court discusses the federal Freedom of Information Act's general privacy exemption, which, like section 878(1)(a) of the ORA, excludes from the Act's mandatory disclosure provisions files "the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6); quoting *United States Department of Justice v. Reporters Committee For Freedom Of The Press* 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

(discussing, as in *FLRA,* the scope of the Freedom of Information Act's Exemption 6).

The individual's interest becomes stronger with regard to personal information the dissemination of which could subject him or her to adverse repercussions. Such repercussions can include embarrassment, stigma, reprisal, all the way to threats of physical harm. *Department of State v. Ray,* 502 U.S. 164, 177 n. 12, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (holding that individuals interviewed by the State Department had a significant privacy interest in having their identities redacted from reports of the interviews where disclosure would subject them "to possible embarrassment and retaliatory action."). In *Board of Examiners,* for example, we upheld the non-disclosure of personal information about the patients of a psychologist who had been accused of impropriety and noted the patients' overriding interest in being spared the embarrassment of having sensitive personal information made public. 826 S.W.2d at 328. Similarly, in *Cape Publications v. City of Louisville,* 147 S.W.3d 731 (Ky.App.2003), the Court of Appeals upheld a police department's policy of redacting from its incident reports the identities of the victims of sexual offenses. The Court noted the inherently embarrassing and traumatic nature of those offenses and held that the victims of such crimes "share a substantial privacy interest in the nondisclosure of their identities." 147 S.W.3d at 735.

To implicate an individual's privacy interest, moreover, the adverse repercussions of public disclosure need not be severe. In *FLRA,* for example, the Supreme Court considered whether the FOIA required federal agencies to release the home addresses of their civil service employees to a labor union interested in soliciting members. Holding that disclosure was not required, the Court found it clear that the employees had at least "*some* nontrivial privacy interest in ... avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure." 510 U.S. at 501, 114 S.Ct. 1006 (emphasis in the original).

Similarly, in *Zink v. Department of Workers' Claims, Labor Cabinet,* 902 S.W.2d 825 (Ky.App.1994), our Kentucky Court of Appeals held that the Labor Cabinet was not required to release the home addresses and phone numbers of injured workers to an attorney hoping to solicit clients. Noting that the privacy of the home is deeply rooted in our laws and traditions, the Court recognized that injured workers have a substantial interest in not being "subjected to unsolicited mail from appellant and perhaps offensive mail or telephone calls from others." 902 S.W.2d at 829.

Private citizens, moreover, have a compelling interest in the privacy of law enforcement records pertaining to them. So compelling, indeed, that the U.S. Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *Reporters Committee,* 489 U.S. at 780, 109 S.Ct. 1468. The record at issue and found not subject to disclosure in *Reporters Committee* was a "rap sheet," or criminal history, compiled by the Federal Bureau of Investigation (FBI). Notwithstanding the fact that the individual pieces of information making up the compilation were matters of public record, the Court found the subject's reputational interest in nondisclosure of the FBI's compilation more than enough to outweigh what the Court believed to be a negligible public interest in disclosure.

Expanding on that holding in *National Archives and Records Administration v. Favish*, 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), the U.S. Supreme Court explained that

> [l]aw enforcement documents obtained by Government investigators often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance. There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course.... In this class of cases where the subject of the documents "is a private citizen," "the privacy interest ... is at its apex."

541 U.S. at 166, 124 S.Ct. 1570 (quoting *Reporters Committee*, 489 U.S. at 756 and 756 n. 9, 777 n. 22, 109 S.Ct. 1468).[6]

In the wake of *Reporters Committee* and *Favish*, the federal courts have held that the names, addresses, and other identifying details of private individuals appearing in law enforcement records are generally exempt from disclosure under the FOIA, unless access to them is necessary to confirm or refute substantial evidence that the agency is engaged in improper conduct or is necessary otherwise to reveal " 'matters of substantive law enforcement policy.' " *American Civil Liberties Union v. United States Department of Justice*, 655 F.3d 1, 14 (D.C.Cir.2011) (quoting *Reporters Committee*, 489 U.S. at 766 n. 18, 109 S.Ct. 1468); *Lahr v. National Transportation Safety Board*, 569 F.3d 964 (9th Cir.2009).

This substantial body of federal case law soundly refutes any suggestion that the privacy interest analysis can be short-circuited by simply observing that "everyone knows" that one's name, address and phone number are not "private." While one's name may be known to everyone he or she comes in contact with on a daily basis and one's address and phone number may be shared with employers, schools, civic organizations, service providers, charitable and religious groups and others, an individual's sharing of this personal information with others does not forfeit all privacy interest in that information, regardless of the context in which it appears. An individual's willingness to associate him or herself publicly with a job, a school, a religious organization, does not imply a willingness to be associated publicly with a law enforcement investigation. Simply put, information need not be secret in order to be deserving of privacy protection. This fundamental point deserves particular emphasis in the context of governmental records where citizens are required, even compelled by law in some instances, to provide private information such as a phone number and residential address that

---

**6.** In *Reporters Committee* and *Favish*, the Court was construing the Freedom of Information Act's Exemption 7(C), which provides that the FOIA does not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This provision, the Court has explained, accords personal information in law enforcement files somewhat greater protection than does the more general Exemption 6, which, as noted above, allows, as does our ORA, non-disclosure of information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § (b)(6). *Reporters Committee*, 489 U.S. at 756, 109 S.Ct. 1468. The difference, however, affects the balancing of the competing public and private interests, not the nature of those interests. *FLRA*, 510 U.S. at 496 n. 6, 114 S.Ct. 1006. Under our statute, too, even with its different balancing standard, a private citizen's interest in the confidentiality of law enforcement records identifying him or her is substantial.

would otherwise be available to only those to whom the citizen chose to divulge that information.

■■■ We have no hesitation in recognizing as the federal courts have, that, absent a statute to the contrary, Kentucky's private citizens retain a more than *de minimus* interest in the confidentiality of the personally identifiable information collected from them by the state.[7] This interest increases as the nature of the information becomes more intimate and sensitive and as the possible consequences of disclosure become more adverse. A person's involvement in any capacity in a criminal investigation poses risks, if disclosed, of embarrassment and stigma, and can easily pose much graver risks as well. Here, the City maintains that disclosure could result in perpetrators having access to information, such as the victim's address, not previously known to the perpetrator. The trial court and the Court of Appeals correctly, therefore, found that the witnesses, victims, and uncharged suspects referred to in the Hopkinsville Police Department's arrest and incident reports, adults and juveniles alike, have privacy interests in their addresses, phone numbers, social security numbers, and driver's license numbers that implicate KRS 61.878(*l*)(a) of the ORA. Moreover, juveniles have long been recognized as entitled to privacy protection when implicated in criminal activity. *See* KRS 610.320 (disclosure of information in court and police records concerning juvenile prohibited) and .340 (confidentiality of juvenile court records); *Jefferson Co. Dept. for Human*

*Services v. Carter*, 795 S.W.2d 59, 61 (Ky. 1990) ("It has been a principle (*sic*) theory of juvenile law that an individual should not be stigmatized with a criminal record for acts committed during minority.") Like the Court of Appeals, we discern no rational basis for recognizing that heightened privacy interest for a juvenile perpetrator but denying it to juvenile victims and witnesses, particularly in the context of records pertaining to stalking, harassment, or terroristic threatening, all typically intensely personal crimes.

■■■ Agreeing with the Courts below that significant privacy interests are at stake, we must next turn to the public interests in disclosure in order to determine whether, notwithstanding the privacy interests, the Act nevertheless requires that the addresses and other disputed pieces of information be disclosed. Disclosure is mandated, under the Act, unless it would be "clearly unwarranted," and breaches of the substantial privacy interests at issue here would clearly not be warranted except to serve the basic purpose of the Act. That purpose is to open the operations and activities of the state's agencies to public scrutiny, to "reveal whether the public servants are indeed serving the public," *Bd. of Examiners*, 826 S.W.2d at 328, or, as the Supreme Court has put it, to enable citizens "to be informed about what their government is up to." *FLRA*, 510 U.S. at 495, 114 S.Ct. 1006. That means, in the first place, that any private interest the requester may have in the information is irrelevant. Under the Act, records that are open are

---

7.  The preamble to House Bill 138 in 1976, the legislation by which ORA came into existence states: "WHEREAS government is the servant of the people and not the master of them; WHEREAS, access to information concerning the conduct of the peoples' business is a fundamental and necessary right of every citizen, NOW THEREFORE ..." Obviously, oversight of the conduct of the peoples' business underlies the ORA but also informing the act is the idea that government is a servant of the people not their master. Citizens do not surrender all personal interest in their "private" information simply because it has been supplied to the government.

open to "any person" for any purpose. KRS 61.872(1). The newspaper's particular desire, therefore, for information that would facilitate its production of "more complete" news articles so as better to inform its readers about local crime does not bear upon the merits of its request.

On the other hand, where the disclosure of certain information about private citizens sheds significant light on an agency's conduct, we have held that the citizen's privacy interest must yield. In *Cape Publications, Inc. v. University of Louisville Foundation, Inc.,* 260 S.W.3d 818 (Ky. 2008), for example, we held that because donors to a public university might hope to influence with their donations the university's policies or decisions or to receive benefits from the university in return, the donors' identities and the amounts of their gifts came within the ORA's disclosure provisions, notwithstanding the breach of privacy thereby entailed.

Similarly, in *Central Kentucky News–Journal v. George,* 306 S.W.3d 41 (Ky. 2010) and *Lexington–Fayette Urban County Government v. Lexington Herald–Leader Company,* 941 S.W.2d 469 (Ky. 1997), we held that settlement agreements in law suits brought by private citizens against, respectively, a school board and a police department, were subject to disclosure. The public's keen interest in knowing the amount of public funds paid out by the agencies in compensation for what injuries to whom easily outweighed, we explained, the recipients' interest in keeping the settlements private.

Where the public interest is more attenuated, however, we have held that disclosure of private information was not warranted. In *Bd. of Examiners,* as noted, we concluded that highly personal patient information revealed to the agency in the course of its investigation into alleged wrong doing by a private psychologist was not to be disclosed notwithstanding whatever interest the public might have in assessing the quality and thoroughness of the agency's performance of its regulatory duties. At least in the absence of any substantial reason to believe that the agency had not "effectually promoted the public interest in regulation," 826 S.W.2d at 328, we noted that disclosure of the private information would not serve the public interest and was not required merely "to satisfy the public's curiosity." *Id.*

■ There is no question in this case of private citizens influencing public policy or being paid public funds. Rather, as in *Bd. of Examiners,* the public interest the newspaper relies on here is the interest in "monitoring" the police department's performance of its investigatory and law enforcement duties. As it now stands, the newspaper will be given the names of those involved (suspects, victims and witnesses) except in the case of juveniles. The newspaper insists their "monitoring" interest is frustrated if the City does not also disclose the addresses of the persons involved, because without the addresses it is hard to tell whether police resources have been disproportionately devoted to certain areas or neighborhoods. According to the newspaper, the public's interest is also frustrated by the non-disclosure of the personal contact information of those involved, because without that information it is impossible to contact those individuals so as to find out "whether and how public law enforcement officers are performing their duties" and to gain "a complete understanding of what happened."

We certainly agree that the public is entitled to assure itself that the Hopkinsville Police Department is providing equal protection to all parts of the community. We do not agree, however, that that interest can only be vindicated by sacrificing the privacy interests of all those with

whom the police come in contact. The home addresses of those individuals, after all, will often have no relation to the alleged incident, and even where an incident occurs at someone's home, it is not necessary to reveal the specific address to adequately locate the incident. A street name and perhaps a block number with the house or building number redacted will be enough to show where in the city the police have, or have not, been active. That, of course, has not been done here nor need it be. Provision of the names of all involved individuals, except juveniles, is sufficient to allow the newspaper to address these neighborhood-specific concerns by simply locating the named individuals through routine methods such as the phonebook, internet databases and property tax records. The need to follow-up on the names of the identified individuals, instead of being handed all of their personal contact information collected by police, brings us to the newspaper's second concern.

We do not agree that adequate agency monitoring requires divulging the contact information of all the private citizens with whom the agency deals. Theoretically, of course, the performance of the police department comes down to the myriad interactions between individual officers and individual citizens, but absent some substantial reason to believe that the redacted arrest and incident reports provided to the newspaper fail adequately to reflect the substance of those interactions and that the private citizens involved could shed meaningful light on some sort of police misfeasance or controversial policy, the public interest in monitoring the police department clearly does not extend to providing phone numbers, addresses and driver's license numbers.

The issue here is very similar to that addressed by the Supreme Court in *United States Department of State v. Ray*. In that case, Haitians seeking political asylum in the United States sought under the FOIA State Department interviews with other Haitians after their asylum claims had been denied and they had been returned to Haiti. With only a couple of exceptions, the interviewees reported that since their return they had not been mistreated by the Haitian government. The State Department disclosed the interviews, but from most of them it redacted the names and other information identifying the interviewees. The requestors maintained that the redactions were improper, because without the interviewees' identities it would be impossible to contact them to find out whether the State Department had accurately and honestly reported the interviews.

Rejecting that argument and upholding the redactions under the FOIA's general privacy exemption (Exemption 6), the Court noted that there was

nothing in the record to suggest that a second series of interviews with the already interviewed returnees would produce any relevant information that is not set forth in the documents that have already been produced. Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy.... We are also unmoved by respondent's asserted interest in ascertaining the veracity of the interview reports. There is not a scintilla of evidence, either in the documents themselves or elsewhere in the record, that tends to impugn the integrity of the reports. We generally accord Government records and official conduct a presumption of legitimacy. If a totally unsupported suggestion that the interest in finding out whether Government agents have been telling the truth justified disclosure of private materials, Government agencies would have no defense against requests for production of private information.

502 U.S. at 179, 112 S.Ct. 541; *see also Lahr v. National Transportation Safety Board,* 569 F.3d at 979 (holding that, by itself, the public interest in being able to contact witnesses who have been interviewed by a law enforcement agency is "insufficient to override the witnesses' . . . privacy interests").

Similarly here, if the newspaper's unsupported speculation that the victims, witnesses, and suspects involved in these incidents might be able to shed light on police misconduct were enough to outweigh those persons' substantial privacy interests, as discussed above, then the privacy exemption would be meaningless. Anyone, after all, could engage in such speculation with regard to any private citizen with whom an agency has dealt. We decline a reading of the ORA so clearly at odds with its plain terms. In any event, the newspaper has received the names of all adults involved in the requested records. The added disclosure of the addresses, telephone numbers, social security numbers and driver's license numbers of the victims, witnesses, and uncharged suspects appearing in the requested police arrest and incident reports, adults and juveniles alike, would constitute a clearly unwarranted invasion of personal privacy, as would disclosure of the names of juveniles in any of those contexts. Consequently, the City's redaction of that information did not contravene the ORA.

## II. The City's Categorical Redaction Policy Does Not Violate the Open Records Act.

Against this conclusion, the newspaper contends that even if the redaction of personal identifiers might be justified in some cases, the City's "blanket" policy of redacting all, or nearly all such information from every report violates the ORA's express policy that its exemptions be "strictly construed." KRS 61.871. That policy requires, according to the newspaper, that all privacy redactions be determined on a "case-by-case, fact-specific" basis. The Attorney General, too, was concerned that the City's general policy ran afoul of the Act's requirement that exemptions be applied narrowly.

As the newspaper correctly notes, the Act forbids *blanket* denials of ORA requests, *i.e.,* the nondisclosure of an entire record or file on the ground that some part of the record or file is exempt: "If any public record contains material which is not excepted under this section [KRS 61.878], the public agency shall separate the excepted and make the nonexcepted material available for examination." KRS 61.878(4). Of course the City's redaction policy is not "blanket" in this sense. On the contrary, the City has complied scrupulously with KRS 61.878(4) by "making available for examination" the requested records after having separated, in its view, the excepted private information from the nonexcepted public information.

The City's redaction policy is more accurately referred to as a "categorical" one. The City has determined that with respect to a particular, recurring class of information—information identifying private citizens in its police reports—the privacy/public-interest balancing so characteristically tips in one direction—privacy—that it is appropriate to withhold, categorically, information in that class. In *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court addressed this issue. It distinguished under the FOIA (which also requires that its exemptions be strictly construed), between blanket non-disclosures and categorical ones and upheld the categorical nondisclosure of witness statements taken prior to NLRB enforcement proceedings.

The Court subsequently confirmed the potential propriety of categorical nondis-

closures and noted that, where appropriate, the categorical approach, " 'by establishing a discrete category of exempt information, implements the congressional intent to provide 'workable' rules.... Only by construing the Exemption to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered.' " *Reporters Committee*, 489 U.S. at 779, 109 S.Ct. 1468 (discussing and quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 27–28, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983)).

In *Reporters Committee*, finally, as noted above, the Court extended this approach to the privacy exemption. It not only approved, under that exemption, the use, where appropriate, of "categorical balanc[ing]," *id.* at 777, 109 S.Ct. 1468, but held, with respect to the very sort of information at issue here, that "*as a categorical matter* ... a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." 489 U.S. at 780, 109 S.Ct. 1468 (emphasis added).

Because it may be presumed that the General Assembly likewise intends that the ORA be "workable," *see, e.g.*, KRS 61.872(6) (authorizing the agency to deny requests that create "an unreasonable burden"), we find the U.S. Supreme Court's common-sense approach to the federal exemptions persuasive. We agree that with respect to discrete types of information routinely included in an agency's records and routinely implicating similar grounds for exemption, the agency need not undertake an ad hoc analysis of the exemption's application to such information in each instance, but may apply a categorical rule. *But see The Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885 (D.C.Cir.1995) (noting that in cases that are not routine an otherwise appropriate categorical rule may not apply). Since, with respect to law enforcement records, a private citizen's privacy interest in not being identified therein by address, phone number, social security number, or the other forms of personal information at issue here will almost always be substantial, and the public interest in disclosure rarely so, we think the City's categorical redaction of such information was, in this case, a reasonable application of KRS 61.878(1)(a).

### CONCLUSION

In sum, the Open Records Act is meant to open the state's public agencies to meaningful public oversight, to enable Kentuckians to know "what their government is up to." It is not meant to turn the state's agencies into clearing houses of personal information about private citizens readily available to anyone upon request. To insure that that is not its effect, the ORA includes an express exemption for agency records the disclosure of which would amount to a clearly unwarranted invasion of personal privacy. The City of Hopkinsville has justly concluded that the public disclosure of the social security numbers, the driver's license numbers, the home addresses, and the phone numbers of victims, witnesses, and uncharged suspects appearing in its police department's arrest and incident reports, as well as all references to juveniles, would constitute, in the vast majority of cases, a clearly unwarranted invasion of those persons' privacy. Its policy of redacting that information before disclosing the reports is in accordance with the Act. The Court of Appeals having correctly so ruled, we hereby affirm its decision.

All sitting. All concur.