RENDERED: FEBRUARY 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0018-MR

COMMONWEALTH OF KENTUCKY,
JUSTICE AND PUBLIC SAFETY
CABINET, DEPARTMENT OF
CORRECTIONS                                                                              APPELLANT


                              APPEAL FROM FRANKLIN CIRCUIT COURT
v.                           HONORABLE THOMAS D. WINGATE, JUDGE
                                          ACTION NO. 22-CI-00448


DAWN CRAWFORD                                                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND A. JONES, JUDGES.

JONES, A., JUDGE: The Appellant, the Commonwealth of Kentucky, Justice and

Public Safety Cabinet, Department of Corrections ("KDOC"), filed this appeal

following the Franklin Circuit Court's order requiring it to release a specific

section of one of its policies and procedures in response to Dawn Crawford's Open

Records Act ("ORA") request. Following careful review of the briefs, record, and all applicable law, we affirm.

## I. BACKGROUND

Dawn Crawford's husband, Marc, a pretrial detainee, died at the Kentucky State Reformatory ("KSR") in Lagrange, Kentucky.[1] Thereafter, on February 5, 2022, Dawn submitted a thirty-one-part ORA request for various records and information to KDOC. KDOC received Dawn's request on February 15, 2022. When Dawn failed to receive a response from KDOC within the statutory deadline, she sought review from the Kentucky Office of the Attorney General ("OAG").[2]

After Dawn sought review from the OAG, KDOC submitted an initial response to Dawn's ORA request. Therein, KDOC stated that it needed additional time to complete the request due to the number of records requested and indicated

---

[1] Marc was arrested on May 25, 2017, and transported to the Madison County Detention Center. He was transferred to KSR on May 31, 2017, where he later died on June 24, 2017. In 2018, Crawford initiated a Civil Rights action against KSR and other parties in the United States District Court for the Eastern District of Kentucky, seeking redress for Marc's death. *Crawford v. Tilley et al.*, Civil Action No. 2018-CV-00623-CHB-MAS. However, the federal court case has no bearing on the ORA issues currently before this Court. *Parish v. Petter*, 608 S.W.3d 638, 641-42 (Ky. App. 2020) ("[T]he processes under the ORA and the Civil Rules are not mutually exclusive. Furthermore, we find no authority suggesting that the election of one remedy would necessary [sic] exclude resort to the other.").

[2] A public agency has five business days to fulfill a request for public records or deny such request and explain why. Kentucky Revised Statutes ("KRS") 61.880(1); KRS 197.025(7). KDOC admitted that it did not respond to Dawn's ORA request within the statutory time frame.

that it would issue a final response by March 11, 2022. On that date, KDOC issued its final response, granting the request in part and denying it in part.[3] As related to this appeal, KDOC did not provide any documents responsive to Dawn's request for the policy and procedure governing investigation of inmate deaths at KRS in 2017. KDOC originally claimed that there was no specific policy and procedure for investigating inmate deaths in place at that time. However, it was later determined that inmate deaths were mentioned in Kentucky Corrections Policies and Procedures ("CPP") 8.3, Critical Incident Management.[4] KDOC withheld production of CPP 8.3 pursuant to KRS 197.025(1) & (6) claiming that it was a "secured policy," and its release would pose a security threat.

Because KDOC did not initially explain how a policy concerning the conduct of an investigation "address[es] the security and control of inmates and penitentiaries" within the meaning of KRS 197.025(6), or how the disclosure of this policy poses a security threat under KRS 197.025(1), the OAG requested KDOC to provide a copy of CPP 8.3 for its *in camera* review. The OAG determined that certain portions of CPP 8.3, particularly those dealing with procedures for responding to disturbances or disasters within the prison, could pose

---

[3] Ultimately, KDOC produced 617 pages of responsive records.

[4] Two different versions of CPP 8.3 were actually in effect during the relevant time period. Our analysis applies equally to both versions, and we refer to CPP 8.3 in the singular for simplicity's sake.

a threat to institutional security if released. However, the OAG did not believe that release of CPP 8.3 Section II(M), which merely addresses the procedure for reviewing critical incidents after the fact, would constitute a threat. Citing KRS 61.878(4)[5], the OAG determined that KDOC violated the ORA when it withheld the CPP in its entirety instead of separating out the excepted information and providing the nonexcepted information. Ky. Op. Atty. Gen. 22-ORD-088.

KDOC then filed an original action with the Franklin Circuit Court challenging the OAG's determination. Before the circuit court, KDOC argued that the Commissioner has the final say on whether records should be withheld under KRS 197.025(1) and the Commissioner's decisions regarding which records pose a threat to institutional safety and security are not reviewable by either the OAG or the circuit court. KDOC also asserted that KRS 197.025(6) excepts the entire CPP and trumps KRS 61.878(4).

After reviewing the applicable statutory authority, the circuit court held that KRS 197.025 does not vest *sole* authority in the Commissioner to determine whether disclosure of a responsive record would pose "a threat to the security of the inmate, any other inmates, correctional staff, the institution or any other person." While the circuit court agreed that the Commissioner had the

_____

[5] This section provides: "If any public record contains material which is not excepted under this section, the public agency shall separate the excepted [material] and make the nonexcepted material available for examination." KRS 61.878(4).

discretion to make the initial determination, it reasoned that KRS 197.025 plainly takes the ORA into consideration, and under the ORA, denial of access to a responsive record or failure to respond to a request permits the requester the right to seek review of the denial or failure to respond from the OAG. After conducting its own *in camera* examination of CPP 8.3, the circuit court agreed with the OAG that CPP 8.3 Section II(M) does not "address the security and control of inmates and penitentiaries," KRS 197.025(6), and accordingly, release of such information would not "constitute a threat to the security of the inmate, any other inmate, correctional staff, the institution, or any other person." KRS 197.025(1). Then, like the OAG, the circuit court determined that KDOC violated the ORA when it withheld the entirety of CPP 8.3 instead of separating the excepted portions and providing the nonexcepted portions. This appeal by KDOC followed.

## II. ANALYSIS

Although Kentucky's ORA has been amended several times since its original enactment in 1976, its objective of providing the people with a mechanism to inform themselves about the business of their Government has remained steadfast. Its purpose today is the same as it was in 1976, to provide the public access to information about their Government "even though such examination may [at times] cause inconvenience or embarrassment to public officials or others." KRS 61.871.

-5-

While the purpose behind the ORA might be abstract, the rights it bestows on the public are "real, direct, present and substantial[.]" *Taylor v. Barlow*, 378 S.W.3d 322, 326 (Ky. App. 2012). It bestows on the people of this Commonwealth, the right to inform themselves about "what their government is up to." *Lawson v. Office of Atty. Gen.*, 415 S.W.3d 59, 73 (Ky. 2013) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773, 109 S. Ct. 1468, 1481, 103 L. Ed. 2d 774 (1989)).

Overall, the [ORA] demonstrates a general bias favoring disclosure." *Hardin Cnty. Schools v. Foster*, 40 S.W.3d 865, 868 (Ky. 2001) (citing *Kentucky Bd. of Exam'r of Psychologists v. Courier-Journal*, 826 S.W.2d 324 (Ky. 1992)). Under the ORA, "records that are open are open to 'any person' for any purpose." *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 85-86 (Ky. 2013). While there are exceptions to disclosure of some public information, those exceptions are to be strictly construed. *See* KRS 61.871. Additionally, if a public record contains both excepted and nonexcepted material, KRS 61.878(4) requires the public agency to "separate the excepted [material] and make the nonexcepted material available for examination."

After receiving an ORA request from a Kentucky resident, the agency at issue "shall determine within five (5) days, excepting Saturdays, Sundays, and legal holidays, after the receipt of any such request whether to

comply with the request and shall notify in writing the person making the request, within the five (5) day period of its decision." KRS 61.880(1). "An agency response denying, in whole or in part, inspection of any record shall include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld." *Id.*

In *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 848 (Ky. 2013), the Kentucky Supreme Court outlined the options available to individuals when the public agency has denied or failed to answer an ORA request.

> [W]hen an agency denies an ORA request, the requester has two ways to challenge the denial. He or she may, under KRS 61.882, file an original action in the Circuit Court seeking injunctive and/or other appropriate relief. Alternatively, under KRS 61.880, he or she may, as was done in this case, ask the Attorney General to review the matter. Once the Attorney General renders a decision either party then has thirty days within which to bring an action pursuant to KRS 61.882(3) in the Circuit Court. Although the statutes refer to this second type of Circuit Court proceeding as an "appeal" of the Attorney General's decision, it is an "appeal" only in the sense that if a Circuit Court action is not filed within the thirty-day limitations period, the Attorney General's decision becomes binding on the parties and enforceable in court. Otherwise, this second sort of Circuit Court proceeding is an original action just like the first sort. KRS 61.880(5)(a) (The appeal is to be treated "as if it were an action brought under KRS 61.882.").

*Id.* at 848.

Importantly, the circuit court is not bound by the prior OAG opinion in any way or limited to the OAG's evidentiary record. KRS 61.882(3). The burden of proof in an ORA circuit court action is on the agency from which the records are sought. *Cabinet for Health and Family Serv. v. Lexington H-L Serv., Inc.*, 382 S.W.3d 875, 883 (Ky. App. 2012). The agency must prove that its decision to withhold documents from the requesting party is justified under the terms of the ORA. *City of Fort Thomas*, 406 S.W.3d at 848.

On appeal, we review the circuit court's factual findings for clear error, and issues concerning the construction of the ORA and any other purely legal matters, such as the construction and application of statutes, *de novo*. *Pearce v. Univ. of Louisville, by & through its Bd. of Trustees*, 448 S.W.3d 746, 749 (Ky. 2014).

KRS 61.878(l) excludes "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly[.]" Of relevance, KRS 197.025(1) and (6) provide:

> (1) KRS 61.870 to 61.884 to the contrary notwithstanding, no person shall have access to any records if the disclosure is deemed by the commissioner of the department or his designee to constitute a threat to the security of the inmate, any other inmate, correctional staff, the institution, or any other person.
>
>  . . .

-8-

(6) The policies and procedures or administrative regulations of the department which address the security and control of inmates and penitentiaries shall not be accessible to the public or inmates. The Administrative Regulations Review Subcommittee's review process for any of these policies and procedures or administrative regulations, which may be filed with the regulations compiler, shall be conducted in closed sessions and held confidential.

*Id.*

KDOC argues that CPP 8.3 is entirely exempt from disclosure under the combined operation of KRS 197.025(1) and (6). KDOC asserts that under subsection (1), the Commissioner has the authority to determine whether a record's release constitutes a security threat, and the Commissioner has determined that CPP 8.3 relates to the security and control of inmates and institutions. It maintains that consequently, under subsection (6), policies addressing such security matters are categorically exempt from public access. KDOC further contends that KRS 61.878(4), which requires agencies to redact and disclose nonexempt portions of public records, does not apply to secured policies under KRS 197.025(6).

When construing a statute, our objective is to determine the legislature's intent in enacting the legislation. *Pearce*, 448 S.W.3d at 749. "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Id*. (quoting *Richardson v. Louisville/Jefferson County Metro Government*, 260 S.W.3d 777, 779 (Ky. 2008)).

-9-

Importantly, "[w]e presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one." *Shively Police Department v. Courier Journal, Inc.*, ___ S.W.3d ___, 2023-SC-0033-DG, 2024 WL 4310555, at *6 (Ky. Sep. 26, 2024) (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

Even though it was decided under a different exemption, we find *University of Kentucky v. Kernel Press, Inc.*, 620 S.W.3d 43 (Ky. 2021), instructive with respect to the interplay between the ORA and KRS 197.025. In *Kernel Press*, the University of Kentucky, in response to an ORA request, withheld an investigatory file pertaining to a former professor who had been accused of sexual assault by two graduate students. The University claimed that the entire file was exempt from ORA disclosure as an "education record" under the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.[6] The trial court held that the University was justified in withholding the entire file because it related to charges made by two students and thereby was properly classified as an exempt educational record under FERPA. Our Court reversed and held the entire

_____

[6] KRS 61.878(1)(k) excludes from the ORA "[a]ll public records or information the disclosure of which is prohibited by federal law or regulation or state law." In this way, it operates much like KRS 61.878(1)(l).

-10-

file should not have been withheld as an educational record. The Kentucky Supreme Court accepted discretionary review noting that the case provided it an opportunity "to reiterate the ORA obligations of a state agency[.]" *Id.* at 52.

The Kentucky Supreme Court then explained that, at the crux of the case, "is the interaction of Kentucky's ORA, a statutory scheme that allows public access to records maintained by public agencies such as the University, and FERPA, a federal statute that prohibits the disclosure of a student's educational records without their consent."[7] *Id.* After observing that the ORA exemptions are to be narrowly construed, the Court held that even if certain documents qualified as educational records, the University had a duty to review the documents and produce them in a redacted form where possible. *Id.* at 58. The Court also held that the University did not have the final say regarding "what public records must be disclosed and what records can lawfully be withheld" as such decisions "are ultimately for the courts within the parameters of the ORA." *Id.* at 62.

The plain language of KRS 197.025(6) indicates that it is aimed at protecting institutional security and only excepts from public disclosure those policies and procedures that deal with "the security and control of inmates and penitentiaries." Insomuch as CPP 8.3 specifically relates to the security and

---

[7] By the same token, the crux of this case is the interplay between the ORA and KRS 197.025, which places certain restrictions on access to inmate and facility records and penitentiary policies and procedures.

-11-

control of inmates and penitentiaries, it is exempt from public disclosure under the ORA. However, it would violate the spirit of transparency behind the ORA to interpret this section as cloaking entire policies and procedures in secrecy. Rather, consistent with *Commonwealth v. Chestnut*, 250 S.W.3d 655, 665 (Ky. 2008), we hold that KDOC must undertake a "winnowing process" to "separate materials exempted from disclosure in a document from materials that are subject to disclosure." *Id.* at 665-66 ("[I]t is clear to us that the prospect of a public agency's potentially negligent disclosure of protected items is simply an insufficient reason to thwart the openness the General Assembly sought to achieve when it enacted the Open Records Act." ); *see also* Ky. Op. Atty. Gen. 05-ORD-055 ("KRS 197.025(6) merely establishes beyond cavil that policies and procedures, as well as administrative regulations, relating to security and control of inmates and penitentiaries are inaccessible to inmates and the public. It does not establish an exception to the general rule of nondisclosure for all other policies and procedures maintained by jails or correctional facilities.").

This brings us to KDOC's second argument that, pursuant to KRS 197.025(1), the Commissioner's decision that release of the CPP poses a threat is not reviewable. While KRS 197.025(1) grants the KDOC Commissioner discretion to withhold records if their disclosure poses a threat to institutional security, we cannot accept that the Commissioner's decision is unreviewable.

KRS 197.025(1) operates within the broader procedural framework of the ORA. The ORA provides a structured process for evaluating whether records should be disclosed, including the opportunity for OAG and judicial review. This framework ensures that exemptions claimed under KRS 197.025(1) are applied appropriately and do not unduly obstruct the public's right to access non-exempt information. As the Kentucky Supreme Court has explained, the best way to uphold the ORA's overriding purposes of transparency and accountability is to ensure that the complaining party has a meaningful opportunity to "disprove a public agency's" proffered reasons for withholding its records. *Bowling v. Lexington-Fayette Urban Cnty. Government*, 172 S.W.3d 333, 341 (Ky. 2005).

Without question, KRS 197.025(1) grants the KDOC Commissioner broad discretion to determine whether a record's disclosure constitutes a security threat. Likewise, we recognize that the KDOC Commissioner is uniquely positioned to evaluate the operational and safety concerns of correctional institutions. The OAG and courts should, therefore, afford the KDOC Commissioner's determinations a substantial amount of deference. *Hopkins v. Smith*, 592 S.W.3d 319, 322 (Ky. App. 2019) ("[A] highly deferential standard of judicial review is constitutionally appropriate with respect to . . . the construction of prison regulations."). However, the KDOC Commissioner's discretion is not absolute and does not foreclose judicial oversight entirely.

The ORA grants the OAG and the courts of justice the authority to review denials of records requests, and this authority remains critical for ensuring that the KDOC Commissioner's determinations are made in compliance with legal and procedural standards. The role of procedural review is not to second-guess the Commissioner's substantive assessments of security risks but to ensure: (1) the Commissioner's decisions are made in good faith and based on legitimate security concerns; (2) the Commissioner followed the proper statutory procedures in making and communicating the determinations; and (3) the Commissioner's determinations are not arbitrary, capricious, or lacking a reasonable basis.

Like the circuit court, we take the safety and security of Kentucky's correctional institutions seriously. Likewise, we understand that the Commissioner possesses expertise and experience in matters of institutional safety and security that the courts lack. However, this does not insulate the Commissioner's decisions from all review. Certainly, though, in matters where the question is debatable, we should defer to the Commissioner's judgment.

We have undertaken a review of CPP 8.3. Like the OAG and the circuit court, we agree with KDOC that the vast majority of the CPP implicates institutional security and deals with security and control of inmates making it exempt from public disclosure. However, CPP 8.3 Section II(M) does not. This section deals only the internal review and investigation of critical incidents after

the fact. Having reviewed CPP 8.3 Section II(M), we cannot see how this CPP presents a debatable issue. It merely addresses the procedures for reviewing critical incidents. We cannot appreciate any reasonable basis on which to conclude that release of that particular CPP section would jeopardize institutional or individual safety and security. Accordingly, we agree with the circuit court that the KDOC abused its discretion when it did not produce CPP 8.3 Section II(M) in response to Crawford's ORA request.

Regrettably, we must address one final issue. During oral argument, KDOC's counsel asserted – for the first time on appeal – that KRS 197.025(1), a statute heavily relied upon in both its appellant's brief and reply, was ultimately of no consequence in this case. Counsel explained that 501 KAR[8] 6:999, a secured regulation inaccessible to both the Court and Crawford, designated CPP 8.3 as a secured regulation in its entirety and was therefore exempt from disclosure under KRS 197.025(6). Although KDOC's counsel stated that the regulation had been cited in the circuit court, counsel also admitted that it was not included in the appeal prior to oral argument. Upon further questioning, counsel acknowledged that it now considered 501 KAR 6:999 the linchpin of this appeal. Following oral argument, and out of an abundance of caution, the Court ordered KDOC to file a

---

[8] Kentucky Administrative Regulations.

-15-

copy of 501 KAR 6:999 under seal and granted Crawford the opportunity to respond to KDOC's belated reliance on the regulation.

KDOC should not be permitted to rely on a regulation that the Court could not discover through ordinary legal research and that it failed to raise until oral argument – particularly when the regulation fundamentally altered the nature of KDOC's argument. Allowing such a tactic disrupts the orderly briefing process, which is essential to a fair and efficient appellate review. The purpose of oral argument is to provide the Court with an opportunity to ask questions about issues already briefed by the parties, not to serve as a forum for injecting new arguments at the eleventh hour.

Moreover, KDOC never filed a motion for leave to cite supplemental authority, as required by our appellate rules when a party wishes to introduce a new legal basis not included in its briefing. Specifically, RAP[9] 35(B) provides:

> A party may file a motion for leave to cite supplemental authority decided before its final brief was filed only for *good cause shown*. Such a motion shall attach the supplemental authority and, in 400 words or less (excluding caption, signature block, and certificate of service) describe how the supplemental authority pertains to the appeal at hand and *why it was not cited in the party's brief.* Other parties to the appeal may file a response with the same word limit.

(Emphasis added.)

---

[9] Kentucky Rules of Appellate Procedure.

-16-

To date, KDOC has failed to offer an acceptable reason for its failure to cite the regulation during briefing.[10] Given these procedural violations, this Court deems any arguments concerning the newly introduced regulation waived, and we decline to consider them.[11] *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 59 (Ky. App. 2006) (refusing to consider issues that were not timely raised in appellant's main brief); *McBrearty v. Kentucky Community and Tech. College System*, 262 S.W.3d 205, 210, n.7 (Ky. App. 2008) ("[W]e uphold the trial court's determination of those issues that were not briefed on appeal.").

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the Franklin Circuit Court.

ALL CONCUR.

---

[10] During oral argument, KDOC's counsel acknowledged that he was not the same attorney who authored KDOC's brief and was therefore unsure why the regulation was not included. While we appreciate counsel's candor, this explanation does not constitute "good cause" for failing to raise the issue in a timely manner.

[11] In *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979), we held that: "The reply brief is not a device for raising new issues which are essential to the success of the appeal." Certainly, if it is not appropriate to raise such issues in a reply brief, oral argument is a particularly inopportune time to do so. *See also McGuire v. Commonwealth*, 595 S.W.3d 90, 95 n.19 (Ky. 2019).

BRIEFS FOR APPELLANT:

Jonathan Gifford
Frankfort, Kentucky


ORAL ARGUMENT
FOR APPELLANT:

Peter Ervin
Frankfort, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

Jessica Winters
Lexington, Kentucky