RENDERED: SEPTEMBER 26, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0033-DG

SHIVELY POLICE DEPARTMENT                                                         APPELLANT

                        ON REVIEW FROM COURT OF APPEALS
V.                                 NO. 2021-CA-1120
               JEFFERSON CIRCUIT COURT NO. 20-CI-005707

COURIER JOURNAL, INC.                                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

After a prolonged, four-year dispute over public records maintained by the Shively Police Department ("SPD"), and requested by the Courier-Journal, Inc. ("Courier Journal") pursuant to the Open Records Act, SPD appeals to this Court from an adverse decision of the Court of Appeals. Among its several issues, SPD asks this Court to consider whether it properly invoked the "law enforcement exemption" to the Open Records Act when it categorically denied the Courier Journal's request for public records on the sole basis that those records pertained to an ongoing criminal case. Having reviewed the record, the applicable law, and the arguments of the parties, we hold that SPD has not proven that it adequately complied with the Open Records Act in this instance. Accordingly, this Court affirms the Court of Appeals and remands to the Jefferson Circuit Court.

## I.    FACTS AND BACKGROUND

Two SPD officers sped northbound down Jefferson County's Dixie Highway for about a mile. The fleeing truck the officers were chasing crossed into the southbound lane, ran a red light, and struck a car traveling eastbound at the intersection of Crums Lane and Dixie Highway. All three passengers of that car, a forty-four-year-old woman, a twenty-one-year-old man, and a nine-month-old infant, died as a result of injuries they sustained in the crash.

Just minutes before the fatal crash, the night of July 27, 2020, the two SPD officers had been responding to the report of a potential domestic violence incident between a man and a woman near a light-colored Nissan truck parked outside of a restaurant off Dixie Highway. When the officers arrived at the scene, they approached a truck matching that description, the truck sped off, and the two officers gave chase. After the ensuing pursuit had ended in fatality, two occupants of the truck fled on foot. A seventeen-year-old juvenile male, believed to be the passenger of the truck, was apprehended. A man believed to be the driver of the truck, twenty-year-old Guy Brison, was arrested four days later.

According to the record, SPD's internal policies authorize its officers to pursue a fleeing vehicle only in instances involving a life-threatening emergency or if officers have probable cause to believe that the fleeing suspect has committed a serious violent felony. The day after the crash, SPD issued a press release stating that the officers had pursued the fleeing truck because they believed the reported domestic violence victim may have been inside the

2

vehicle and in need of assistance. SPD later publicly confirmed that the pursuing officers had indeed complied with SPD's vehicle pursuit policies.

According to the Courier Journal, the content of SPD's internal vehicle pursuit policies caused the newspaper to question SPD's public vindication of its own officers, and, as a result, the Courier Journal requested multiple public records from SPD pursuant to the Open Records Act. *See* KRS 61.870–884. The Courier Journal specifically sought (1) computer aided dispatch ("CAD") reports related to the initial domestic violence report and the fatal collision; (2) related 911 calls; (3) recorded audio communications involving the officers that pursued the fleeing truck, including their communications with dispatchers and their supervisory personnel; (4) dashcam and bodycam footage from the time the officers were dispatched to the time the first fleeing suspect was apprehended; and (5) related incident and accident reports.[1] Within thirty-six minutes of receiving the Courier Journal's open records request, on August 10, 2020, SPD denied the request in full and supported its denial with a single sentence: "As there is an active criminal case regarding this incident, all of the above request are denied under the following exclusion rule: KRS 61.878 subsection (1)(h)[.]"[2]

Often referred to as the "law enforcement exemption" to the Open Records Act, KRS 61.878(1)(h) exempts from mandatory public disclosure those

---

[1] The Courier Journal requested these records in five individual open records requests, but the parties have treated the requests as one encompassing request for purposes of this litigation.

[2] SPD's denial email also quoted the entire text of KRS 61.878(1)(h).

"[r]ecords of law enforcement agencies . . . that were compiled in the process of detecting and investigating statutory . . . violations if the disclosure of the information would harm the agency by . . . premature release of information to be used in a prospective law enforcement action[.]"[3] This Court has previously interpreted the law enforcement exemption to be properly invoked "only when the agency can articulate a factual basis for applying it, only, that is, when, because of the record's content, its release poses a concrete risk of harm to the agency in the prospective action." *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 851 (Ky. 2013). "A concrete risk, by definition, must be something more than a hypothetical or speculative concern." *Id.*

After receiving SPD's rapid and nondescript denial of its open records request, the Courier Journal sought an injunction in Jefferson Circuit Court ordering SPD to immediately turn over the public records it had requested. *See* KRS 61.882(1)–(2). In its Answer to the Courier Journal's Complaint, SPD again maintained that the requested records were exempt from mandatory disclosure pursuant to the law enforcement exemption. As support for that contention, SPD proffered an affidavit from its Chief of Police, Colonel Kevin Higdon, in which he attested that the records "are part of evidence that will be used for the Commonwealth Attorney to make a decision whether or not further prosecutorial action will be taken following a criminal investigation," and that

---

[3] The full text of KRS 61.878(1)(h) also exempts certain records maintained by agencies engaged in administrative adjudications, as well as records maintained by county attorneys and Commonwealth's Attorneys.

4

"the release of these records poses a concrete risk of harm to the SPD and Commonwealth's Attorney in the prospective action and may hinder the agency's investigation."

SPD further supported its denial of the Courier Journal's open records request by citing two other exemptions to the Open Records Act, KRS 61.878(1)(a), which exempts from disclosure records "containing information of a personal nature where the public disclosure thereof would constitute a clearly warranted invasion of personal privacy," and KRS 61.878(1)(l), which exempts records "the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly[.]" Pertaining to the latter exemption, SPD contended that KRS 17.150(2), a statute residing in a section of the code devoted to "Criminal Records and Statistics," allowed it to withhold the requested records. KRS 17.150(2) states specifically that, "Intelligence and investigative reports maintained by criminal justice agencies are subject to public inspection if prosecution is completed or a determination not to prosecute has been made."

In June 2021, the parties filed competing motions for summary judgment, and, in September 2021, the circuit court issued an order granting in part and denying in part the Courier Journal's Motion for Summary Judgment. Relevant to this appeal, in the portion of the circuit court's order denying summary judgment, the court ruled that SPD had met its burden of proof under the law enforcement exemption and, thus, the records the Courier Journal had requested in August 2020 were exempt from disclosure pursuant

5

to KRS 61.878(1)(h).[4] The circuit court ruled that it need not consider whether SPD was entitled to withhold the requested records pursuant to the "personal privacy exemption" or KRS 17.150(2).

The Courier Journal appealed the circuit court's ruling to the Court of Appeals, which reversed the circuit court in November 2022. *See Courier-Journal, Inc. v. Shively Police Department*, No. 2021-CA-1120-MR, 2022 WL 16842295 (Ky. App. Nov. 10, 2022). The Court of Appeals specifically held that SPD had not sufficiently demonstrated that the records at issue were exempted from disclosure under the law enforcement exemption, the personal privacy exemption, or under KRS 17.150(2). Accordingly, the Court of Appeals vacated the portion of the circuit court's order granting summary judgment in favor of SPD and denying summary judgment as to the Courier Journal, and remanded for further proceedings regarding the release of the requested records. The

---

[4] The portion of the circuit court's order *granting* summary judgment in favor of the Courier Journal pertained to a separate request for public records that the Courier Journal filed with SPD in July 2021. According to the circuit court's order, the Courier Journal had requested records regarding SPD officer commendations, complaints, and sanctions, as well as SPD's vehicle pursuit policy. Although the circuit court ordered SPD to produce the records described in the July 2021 request, the parties note, and the record reflects, that the Courier Journal never sought to amend its Complaint to reference its July 2021 request. It appears only that the Courier Journal referenced the July 2021 request during an oral argument on the parties' competing motions for summary judgment, and filed a Plaintiff's Notice of Filing Additional Authority with SPD's denial of that request attached. From our review of the record, it does not appear that the Courier Journal sought for the circuit court to issue a ruling regarding its July 2021 request, but merely referenced the request to illustrate that SPD had repeatedly denied additional requests for public records. Regardless, SPD notes that it chose not to appeal the portion of the circuit court's order pertaining to the July 2021 request, and instead complied with the order to produce those requested records. The Courier Journal, likewise, indicates that SPD did indeed produce those records. As such, the portion of the circuit court's order granting summary judgment in favor of the Courier Journal is not before this Court.

Court of Appeals recommended that the circuit court conduct an *in camera* review of the requested records on remand.

This Court thereafter granted SPD's Motion for Discretionary Review.

## II.     STANDARD OF REVIEW

Our appellate standard of review of a trial court's ruling on a motion for summary judgment is "whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)). "[W]e generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Id.* Further, we reiterate that this Court reviews issues concerning the statutory construction of the Open Records Act, *de novo. City of Fort Thomas*, 406 S.W.3d at 849.

## III.     ANALYSIS

The General Assembly has declared that the "free and open examination of public records is in the public interest[.]" KRS 61.871. As such, "[a]ll public records shall be open for inspection by any resident of the Commonwealth, except as otherwise provided by [the Open Records Act.]" KRS 61.872(1).

The free and open examination of public records "may reveal whether the public servants are indeed serving the public, and the [Open Records Act's] policy of disclosure provides impetus for an agency steadfastly to pursue the public good." *Ky. Bd. of Exam'rs of Psychs. & Div. of Occupations & Pros., Dept.*

7

*for Admin. v. Courier-Journal & Louisville Times Co.*, 826 S.W.2d 324, 328 (Ky. 1992). "However, the right to examine public records is not absolute[.]" *Univ. of Ky. v. Kernel Press, Inc.*, 620 S.W.3d 43, 52 (Ky. 2021). The Open Records Act, accordingly, provides that certain categories of public records are excepted or exempted from its mandatory disclosure provisions. *See* KRS 61.878(1)(a)–(s). Even so, the General Assembly has stated that these exemptions "shall be strictly construed." KRS 61.871.

When a public agency invokes an Open Records Act exemption, thereby denying the public access to its own records, the agency's obligations in that circumstance are clear. *Kernel Press, Inc.*, 620 S.W.3d at 52. The agency "shall include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld." KRS 61.880. "The agency's explanation must be detailed enough to permit the court to assess its claim and the opposing party to challenge it." *Ky. New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 81 (Ky. 2013). These requirements apply equally to each *record* requested from the agency.

Accordingly, in instances where the requester poses a voluminous request, seeking multiple public records, the agency is not permitted to wholly deny the request without differentiating between the particular kinds of records it holds. *Kernel Press, Inc.*, 620 S.W.3d at 54–55 (holding that public agency improperly treated an entire 470-page investigative file as one record unable to be separated or compartmentalized). In fact, the General Assembly requires that "[i]f any public record contains material which is not excepted under [the

8

Open Records Act], the public agency shall separate the excepted and make the nonexcepted material available for examination." KRS 61.878(4). While "[t]he agency is not required to justify nondisclosure on a line-by-line or even document-by-document basis," the agency may comply with the Open Records Act by categorizing its records and explaining how each category is exempted from disclosure. *Kernel Press, Inc.*, 620 S.W.3d at 54 (citing *City of Fort Thomas*, 406 S.W.3d at 851).[5] Further, the burden of proving that a public record is exempted from mandatory disclosure falls upon the agency asserting the exemption. *City of Hopkinsville*, 415 S.W.3d at 81 (citing KRS 61.882(3)).

## A. The Law Enforcement Exemption

On appeal, SPD asserts that the circuit court's grant of summary judgment was appropriate because the law enforcement exemption, KRS 61.878(1)(h), permits it to withhold the records requested by the Courier Journal as a matter of law. We disagree.

This Court has previously interpreted the law enforcement exemption to require an agency invoking the exemption to "show (1) that the records to be withheld were compiled for law enforcement purposes; (2) that a law enforcement action is prospective; and (3) that premature release of the records would harm the agency in some articulable way." *City of Fort Thomas*, 406 S.W.3d at 850. The mere existence or prospect of a law enforcement action is

---

[5] We note that SPD's initial letter denying the Courier Journal's open records request was deficient in this respect. Rather than individually or categorically assess each of the records requested by the newspaper, SPD issued a "blanket" rationale for why the entirety of the Courier Journal's request was exempt from disclosure.

alone an insufficient basis to withhold public records pursuant to this exemption; there must be some potential for harm associated with the premature release of the agency's records. As aforementioned, this risk of harm must be concrete, amounting to "something more than a hypothetical or speculative concern." *Id.* at 851.

Applying this standard, we note preliminarily that SPD's initial denial of the Courier Journal's open records request was statutorily infirm. SPD's initial denial letter made no attempt to explain how public inspection of the requested records would harm the agency's investigative or prosecutorial efforts. Rather, SPD's initial denial briefly stated, "As there is an active criminal case regarding this incident, all of the above request are denied[.]" This bare justification for nondisclosure rests on precisely the interpretation of the law enforcement exemption that this Court rejected in *City of Fort Thomas. Id.* at 850.

It was only when SPD was brought before the circuit court that it proffered an explanation for its denial that was somewhat commensurate with the law enforcement exemption's "harm" requirement. In his affidavit, SPD Chief Higdon relevantly attested:

4. That the SPD now submits that the requested records were collected and compiled by the SPD as necessary evidence required for the prosecution of this case, and which records have been presented to the Commonwealth's Attorney. The requested records which are being withheld are part of the evidence that will be used for the Commonwealth Attorney to make a decision whether or not further prosecutorial action will be taken following a criminal investigation.

5. That the release of these records poses a concrete risk of harm to the SPD and Commonwealth's Attorney in the prospective action and may hinder the agency's investigation.

10

6. That any 911 calls place (sic) to SPD relating to the incident would contain information from a caller who would likely be interviewed by SPD in its investigation, and an early release of a 911 call could compromise a witness and recollection of what transpired during the incident and would have a negative impact on the veracity of witness statements relating to this incident and will ultimately taint the grand jury pool if an indictment is sought by the Commonwealth's Attorney.

7. That, likewise, early release of the audio recordings, CAD reports, dashcam bodycam footage and incident accident reports would harm the agency by compromising witness recollections and statements and tainting the grand jury in this prospective law enforcement action and even more so if a witness or potential grand juror is exposed to a release of only a portion of the evidence withheld thus tainting and compromising their impartiality in this prospective law enforcement action.

We observe that Chief Higdon's affidavit adequately confirmed that the requested records were, in fact, compiled during an SPD investigation, and that the records were to be used in a prospective law enforcement action. The remainder of Chief Higdon's affidavit, however, does little to demonstrate what harm would befall the SPD or Commonwealth's Attorney should these records be released. We note that a mere recitation of the legal standard this Court announced in *City of Fort Thomas* is not enough to properly invoke the law enforcement exemption. The agency must articulate some factual basis for applying the exemption that bears on the record's content. *Id.* at 851.

Chief Higdon's affidavit, however, lacks any facts regarding the content of the requested records or the prospective law enforcement action that would purportedly be harmed if those records were subject to public inspection. In the absence of such facts, we can hardly say that any risk of harm associated with the release of these records is "concrete." Rather, in a mere two sentences,

11

Chief Higdon's affidavit offered only speculative concerns regarding the records' release that would seemingly apply universally to any criminal investigation turned felony prosecution—that the requested records could potentially compromise the recollections of some unnamed or unknown witnesses and that the release of the records might taint a future grand jury proceeding. While these may, perhaps, be legitimate concerns, it is clear that SPD failed to provide even a "minimum degree of factual justification," that would draw a nexus between the content of the specific records requested in *this* case and the purported risks of harm associated with their release. *Id.* at 852.

We are not unsympathetic, however, to the plight of law enforcement agencies attempting to lawfully invoke the law enforcement exemption. While the Open Records Act requires some degree of factual justification to prove the agency faces a concrete risk of harm, it is easy to see how a more exacting requirement could quickly subvert the exemption's purpose of shielding sensitive information from public inspection. Logically, the more factual information the agency offers to support its denial of an open records request, the more information it has revealed about its records and ongoing enforcement action. Accordingly, we acknowledge that satisfying the law enforcement exemption's "harm" requirement might indeed resemble a tight rope walk for some law enforcement agencies. Further, we posit that the law enforcement exemption's "harm" requirement is perhaps an even greater burden for law enforcement agencies to bear at the outset of a criminal investigation, when the agency has yet to fully determine what facts, evidence,

12

or records are material to its ongoing or impending law enforcement action. In these instances, and with all invocations of the law enforcement exemption, we simply implore law enforcement agencies to attempt to provide as many facts and details as reasonably possible to support their justifications for denial. Where some factual disclosure, even to a limited extent, "would defeat the exemption, [an] *in camera* inspection may be necessary, but those cases should be the exception." *Id.*

Here, it is clear, however, that SPD failed to provide even a minimum degree of factual justification for its reliance on the law enforcement exemption, nor did SPD move the circuit court to review the requested records *in camera*. We also note that SPD further failed to meaningfully differentiate between the kinds of records the Courier Journal had requested and similarly failed to address how the risks associated with their release might vary by record. Accordingly, we hold that, as a matter of law, SPD failed to prove its denial of the Courier Journal's open records request was justified pursuant to the law enforcement exemption. Therefore, the portion of the circuit court's order granting summary judgment in favor of SPD and denying summary judgment as to the Courier Journal on this basis is vacated.

On remand, the circuit court shall conduct further proceedings regarding the release of these requested records consistent with this Opinion. This is an opportunity for SPD to provide the necessary factual justifications for its continued reliance on the law enforcement exemption. We strain to see how the SPD's original justifications for nondisclosure of these records—the

13

compromise of witness statements and the tainting of the grand jury pool—might still pose a threat to some ongoing or prospective law enforcement action.[6] Nonetheless, SPD again bears the burden of proving that the release of the requested records "poses a *concrete* risk of harm to the agency" in some prospective action, whatever that may be. *Id.* at 851 (emphasis added). On remand, we trust the circuit court to properly exercise its discretion whether or not to conduct an *in camera* review of the requested records, as described in KRS 61.882(3).

## B. KRS 17.150(2)

Alternatively, SPD has consistently argued throughout this litigation that KRS 17.150(2) permits law enforcement agencies to categorically withhold public records relevant to ongoing criminal investigations and prosecutions without first demonstrating that the release of those records poses a concrete risk of harm to the agency. Because such an interpretation of KRS 17.150(2) is obviously in conflict with this Court's prior interpretations of the law enforcement exemption, our task is one of statutory construction and interpretation.

---

[6] According to the unofficial CourtNet record in *Commonwealth v. Brison*, No. 20-CR-001392, the alleged driver of the fleeing truck that caused the fatal 2020 collision on Dixie Highway has since been indicted on eighteen various counts of murder, wanton endangerment, fleeing or evading the police, etc. The same unofficial CourtNet record indicates that the Jefferson Circuit Court ordered a jury trial in that matter to be scheduled for May 20, 2025.

14

Our primary goal in interpretating the statutes of this Commonwealth is to carry out the intent of the General Assembly. *City of Fort Wright v. Bd. of Trs. of Ky. Ret. Sys.*, 635 S.W.3d 37, 44 (Ky. 2021).

> We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts.

*Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (citations omitted).

First, a reading of the plain language of the statute leads this Court to conclude that the General Assembly clearly intended KRS 17.150(2) to have at least *some* effect on the disclosure of certain public law enforcement records, for the statute unmistakably states, "Intelligence and investigative reports maintained by criminal justice agencies are subject to public inspection if prosecution is completed or a determination not to prosecute has been made." However, as made obvious by the prolonged open records dispute before this Court today, the extent of KRS 17.150(2)'s scope is not manifestly clear on its face. We, accordingly, look beyond the statute's plain text to ascertain the General Assembly's intent.

KRS 17.150(2) resides in a section of KRS Chapter 17 devoted specifically to the collection, storage, and dissemination of "Criminal Records and

15

Statistics." *See* KRS 17.110–190. Relevantly, KRS 17.140(1) requires that Kentucky's Justice and Public Safety Cabinet create a "centralized criminal history record information system" to be overseen by the Kentucky State Police (KSP). The term "centralized criminal history records" refers to information pertaining to a person's "identifiable descriptions and notations of arrests, detentions, indictments, information, or other formal criminal charges and any disposition arising therefrom, including sentencing, correctional supervision, and release" that is "collected" and "maintained" by the Justice and Public Safety Cabinet "in a central location." KRS 17.150(4). It is important to note that routine centralized criminal history records are unlike the records at issue in this case; centralized criminal history records are not bodycam footage or 911 calls. Rather, centralized criminal history records seem to bear some similarity to records colloquially referred to as "RAP sheets." In fact, the Justice and Public Safety Cabinet compiles centralized criminal history record information with the intent to share that information with "participating federal bureaus, departments, or criminal justice agencies engaged in the administration of criminal justice programs." KRS 17.147(6). Further, the General Assembly has expressly declared that "[c]entralized criminal history records are not subject to public inspection." KRS 17.150(4).

Among the Commonwealth's statutes delineating the collection, storage, and dissemination of centralized criminal history records, exists a seemingly unrelated statute that refers instead to the public inspection of "[i]ntelligence and investigative reports maintained by criminal justice agencies." KRS

16

17.150(2). The contrast between KRS 17.150(2) and its surrounding statutes cannot be overstated. In fact, no statute in KRS Chapter 17, other than KRS 17.150(2), refers to law enforcement "intelligence and investigative reports." Despite the glaring reality that KRS 17.150(2) seems to be an oddity in a statutory scheme related to criminal history data, Kentucky's law enforcement agencies have relied on KRS 17.150(2) as a justification to shield their public records from public scrutiny for nearly fifty years.

As authorized by the Open Records Act, the Office of the Attorney General plays a vital role in resolving open records disputes in this Commonwealth. Pursuant to KRS 61.880(2), the Attorney General may "review a public agency's denial of a request to inspect a public record." The Attorney General's decision is then appealable to the circuit court. KRS 61.882(3). As a result of the Attorney General's initial role in resolving open records disputes, the bulk of the case law applying and interpreting the Open Records Act, and its exemptions, is dominated by Opinions of the Attorney General. For example, our research reveals that Opinions of the Attorney General have referenced KRS 61.878(1)(h), the law enforcement exemption, hundreds of times, while this Court has only had occasion to discuss that same statute less than a dozen times. Perhaps recognizing this phenomenon, this Court has previously stated that "Opinions of the Attorney General are considered highly persuasive and have been accorded great weight," although the Attorney General's opinions are ultimately not binding on the courts. *Carter v. Smith*, 366 S.W.3d 414, 420 n.2 (Ky. 2012).

17

Shortly after KRS Chapter 17 was amended in 1976, the Office of the Attorney General first interpreted KRS 17.150(2)'s ambiguous text, in conjunction with the law enforcement exemption, to mean that "the records of [a] police department on a particular case may be held confidential while the case is pending." OAG 79-387. Since this decision, multiple Attorneys General have similarly and consistently interpreted KRS 17.150(2) to allow law enforcement agencies to withhold public records on the sole basis that those records relate to a criminal prosecution that is prospective or pending; no showing of harm is required under the Attorney General's interpretation. *See, e.g.,* OAG 90-143 ("[T]he right of public inspection set forth in KRS 17.150(2) is contingent upon the completion of the investigation and litigation or a determination having been made not to prosecute.").

Even though the Office of the Attorney General's interpretation of KRS 17.150(2), now relied upon by SPD, does indeed have a long history, we note that most of that history came *before* this Court decided *City of Fort Thomas v. Cincinnati Enquirer,* 406 S.W.3d 842 (Ky. 2013). While the Office of the Attorney General often cited KRS 17.150(2) as a categorical exemption for law enforcement records throughout the latter half of the 20th Century, it was also similarly misinterpreting the Open Records Act's law enforcement exemption in a way that failed to meaningfully address the statute's "harm" requirement. *See, e.g.,* OAG 87–29; OAG 87–15; OAG 90–64; OAG 91–124; 92-ORD-1287. For instance, the Office of the Attorney General wrote in September 1993 that,

"This Office has previously recognized that pursuant to KRS 61.878(1)(g),[7] investigative files in the possession of a law enforcement agency are not open to inspection while the case is active." 93-ORD-106. In this vein, the Office of the Attorney General construed the law enforcement exemption and KRS 17.150(2) as companion statutes that *each* categorically exempted law enforcement records from public disclosure during the pendency of an investigation or prosecution. However, in 2013, this Court, as the foremost and final interpreter of the statutes of this Commonwealth, made clear that the law enforcement exemption does *not* exempt law enforcement records from public disclosure unless the agency invoking the exemption can demonstrate the record's "release poses a concrete risk of harm to the agency in the prospective action." *City of Fort Thomas*, 406 S.W.3d at 851. It is against this backdrop that we are now asked to consider whether KRS 17.150(2) operates to eviscerate the "harm" requirement of the law enforcement exemption by allowing criminal justice agencies to withhold certain public records merely by claiming they will be used in an ongoing or prospective criminal prosecution.

Despite the many years' worth of Attorney General opinions interpreting KRS 17.150(2) to allow the categorical nondisclosure of certain law enforcement records before a related prosecution has concluded, this Court interprets the statute to have no bearing on whether public records can be disclosed *before* a criminal prosecution is completed or a determination not to

---

[7] From 1992 to 1994, the law enforcement exemption was codified at KRS 61.878(1)(g).

19

prosecute has been made. Instead, we interpret KRS 17.150(2) to govern only the mandatory disclosure of "intelligence and investigative reports" *after* the related criminal prosecution has been completed or a determination not to prosecute has been made. In this respect, KRS 17.150(2) delineates how "criminal justice agencies" should respond to open records requests for "intelligence and investigative reports" after a criminal prosecution concludes: the statute plainly provides that the requested records "are subject to public disclosure." The statute then provides four exceptions to that general rule. Even where a related criminal prosecution has already concluded, intelligence and investigative reports may, nonetheless, be lawfully withheld when public inspection of those records may disclose:

  (a) The name or identity of any confidential informant or information which may lead to the identity of any confidential informant;

  (b) Information of a personal nature, the disclosure of which will not tend to advance a wholesome public interest or a legitimate private interest;

  (c) Information which may endanger the life or physical safety of law enforcement personnel; or

  (d) Information contained in the records to be used in a prospective law enforcement action.

KRS 17.150(2)(a)–(d). The statute mandates that the agency citing one of these exceptions shall bear the burden of justifying its refusal with specificity. KRS 17.150(3).

To hold otherwise, and to interpret KRS 17.150(2) in a manner consistent with the Office of the Attorney General and SPD, would be to effectively erase

20

the "harm" requirement from KRS 61.878(1)(h) and therefore render a meaningful portion of the Open Records Act meaningless. Such an interpretation is unpalatable when we consider our duty to harmonize conflicting statutes so as to give effect to each of the General Assembly's enactments. *Ledford v. Faulkner*, 661 S.W.2d 475, 476 (Ky. 1983). Going forward, KRS 61.878(1)(h) and KRS 17.150(2) should be interpreted to act in concert to address two distinct stages of records disclosure. The law enforcement exemption shall apply to govern the release of law enforcement records before a prosecution has been completed, and KRS 17.150(2) shall apply to direct the release of certain "intelligence and investigative reports" post-prosecution. The harmony between these two statutes is even more apparent when one considers that the law enforcement exemption also instructs that, "Unless exempted by other provisions of [the Open Records Act], public records exempted under this provision shall be open *after* enforcement action is completed or a decision is made to take no action." KRS 61.878(1)(h) (emphasis added). As incorporated by KRS 61.878(1)(l), the exceptions to release listed in KRS 17.150(2)(a)–(d) explain when records may be withheld post-enforcement action.

In reaching our interpretation of KRS 17.150(2), we also assume that the same General Assembly which declared that the "free and open examination of public records is in the public interest" would not drastically alter the force of the Open Records Act in a statute as peripheral or tangential as KRS 17.150(2).

The General Assembly does not hide elephants in mouseholes. *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 791 (Ky. 2019).

While our interpretation of KRS 17.150(2) may be in contrast to some open records decisions rendered by the Office of the Attorney General, this Court believes that the intent of the General Assembly has always been to promote the open inspection of public records. We, accordingly, strictly construe KRS 61.878(1)(l) and KRS 17.150(2).

As SPD has consistently suggested that the existence of an ongoing criminal prosecution prevents it from releasing the records in this case, we hold that it is premature for SPD to rely on KRS 17.150(2) to withhold those records.

## C. The Personal Privacy Exemption

SPD finally argues that it is entitled to withhold the bodycam and dashcam footage requested by the Courier Journal, in full, because those public records are exempt from disclosure pursuant to the Open Records Act's "personal privacy exemption," codified at KRS 61.878(1)(a). SPD specifically argues that portions of the requested video footage depict the fatal July 2020 car crash on Dixie Highway, and that releasing this footage would violate the personal privacy interests of the deceased victims and their families. The Courier Journal conversely argues that it has no interest in the portions of dashcam and bodycam footage that might depict deceased individuals, and instead only seeks video footage depicting the high-speed chase on Dixie Highway and the events immediately preceding that chase.

22

KRS 61.878(1)(a) permits public agencies to lawfully withhold "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]" To determine whether a public record was properly withheld pursuant to the personal privacy exemption, a reviewing court conducts a "comparative weighing" of the competing interests at stake in the record's release—those interests being an individual's interest in personal privacy and the public's interest in disclosure. *City of Hopkinsville*, 415 S.W.3d at 82.

This court is cognizant of the deceased victims of the Dixie Highway crash and their families' potential privacy interest in the depiction of their images that would warrant nondisclosure pursuant to KRS 61.878(1)(a). However, the Courier Journal has made it abundantly clear that is does not seek these images. In effect, it is as if the Courier Journal has conceded that these limited portions of the requested records are indeed exempt from disclosure. However, the Open Records Act requires that "[i]f any public record contains material which is not excepted under this section, the public agency shall separate the excepted and make the nonexcepted material available for examination." KRS 61.878(4). Therefore, even if some portions of the requested video records contain content that is exempt from disclosure, SPD still has a duty to release the portions of the videos that are not exempted.

SPD makes no meaningful attempt to explain *how* the remaining portions of the requested dashcam and bodycam footage are exempt from disclosure pursuant to the personal privacy exemption. Further, Chief Higdon's

23

affidavit provides no real justification for the agency's denial of the Courier Journal's open records request pursuant to KRS 61.878(1)(a). Instead, Chief Higdon's affidavit merely makes a conclusory assertion that releasing the entirety of the requested footage would "constitute a clearly unwarranted invasion of privacy." Accordingly, this Court is left with little to no facts to aid in determining whether these remaining portions of the requested footage "contain[] information of a personal nature," let alone whether the public disclosure of that information "would constitute a clearly unwarranted invasion of personal privacy." KRS 61.878(1)(a). As such, SPD has failed to meet its burden of proof under the personal privacy exemption. We hold that the personal privacy exemption, KRS 61.878(1)(a), is an improper basis to categorically withhold the *entirety* of the requested dashcam and bodycam video in this instance.

### D. Costs and Attorney's Fees

Pursuant to the Open Records Act, the prevailing party in an open records dispute may be entitled to an award of costs and reasonable attorney's fees, if the circuit court finds that the agency willfully withheld public records in violation of the Open Records Act. KRS 61.882(5). If the records requester prevails only in part, the circuit court "may in its discretion award him costs or an appropriate portion thereof." *Id.* "In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record." *Id.*

24

In determining what constitutes a "willful violation" of the Open Records Act, this Court has before stated that, "A public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act." *Bowling v. Lexington-Fayette Urb. Cnty. Gov't*, 172 S.W.3d 333, 343 (Ky. 2005). "In other words, a technical violation of the Act is not enough; the existence of bad faith is required." *Id.*

On appeal, SPD asks this Court to acquit it of any alleged willful violation of the Open Records Act. SPD specifically contends that its actions cannot amount to a willful violation of the Open Records Act, because it denied the Courier Journal's open records request relying in good faith on the Office of the Attorney General's interpretations of KRS 17.150(2). However, like the Court of Appeals, we too conclude that any consideration of whether SPD willfully violated the Open Records Act is premature at this juncture. Because we remand to the circuit court for further proceedings regarding the release of the requested records pursuant to the law enforcement exemption, there is not yet a prevailing party in this action, and we decline to speak to whether SPD willfully violated the Open Records Act. If the circuit court orders SPD to release the requested records on remand, we expect the circuit court to make an appropriate determination regarding costs and fees.

We do note, however, for clarity, that SPD did not seem to rely on KRS 17.150(2)'s text when it initially denied the Courier Journal's request for public records. Rather, SPD cited only the law enforcement exemption in its initial

25

mechanical denial of the Courier Journal's request. Further, SPD invoked an interpretation of the law enforcement exemption that this Court has expressly rejected in *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842 (Ky. 2013).

## IV.    CONCLUSION

For the foregoing reasons, this Court affirms the Opinion of the Court of Appeals vacating the portion of the circuit court's order granting summary judgment in favor of SPD and denying summary judgment as to the Courier Journal. We remand for further proceedings regarding the release of the requested records consistent with this Opinion.

VanMeter, C.J.; Conley, Lambert and Nickell, JJ., and Key and Harned, S.J., sitting. VanMeter, C.J., Conley, Lambert, Nickell, JJ., and Harned, S.J., concur. Key, S.J., concurs in part and dissents in part by separate opinion. Bisig and Thompson, JJ., not sitting.

KEY, S.J., CONCURRING IN PART AND DISSENTING IN PART: I concur with the result and most of the reasoning outlined in the majority opinion. I dissent, in part, to address the interpretation of KRS 17.150(2) that will now be the law of this Commonwealth, namely that this statute cannot be invoked until the post-prosecution stage of a case.

The circuit court expressed no opinion on this interpretation. While the Court of Appeals did, it did not express complete confidence about this interpretation. Specifically, the Court of Appeals stated (in this case where prosecution is not yet complete) "*[s]o even if KRS 17.150(2) somehow applied*, it

26

would not justify the complete withholding of all of the records by itself." (emphasis added).

KRS 17.150(2), by its plain text, only applies to intelligence and investigative reports. The open records request in this case included 911 calls and bodycam footage. No party to this litigation has cited to any authority that a 911 call or bodycam footage can be classified as an intelligence or investigative report.

As such, the Court of Appeals correctly concluded that KRS 17.150(2) could not be used to withhold all of the records. Combined with the remanding of the case to the circuit court, that would seem to be enough. This is particularly true when the circuit court already ruled below (concerning a separate request) that KRS 17.150(2) could not be used to withhold officer commendations, complaints and sanctions, and vehicle pursuit policies, as those items are not intelligence or investigative reports.

This should alleviate any concern that the Attorney General's long-standing interpretation (that the statute can be invoked before or during prosecution) would cause criminal justice agencies to simply respond to open records requests with the blanket allegation that the requested records are "intelligence or investigative reports." Circuit courts will have the power to see through (and penalize) such arguments.

Regardless, the majority goes further in attempting to address its main worry that KRS 17.150(2) should not eviscerate the "harm" requirement of the law enforcement exception. But to the point raised above, criminal justice

27

agencies will likely now just allege blanket "harm" when intelligence or investigative reports are requested, which could result in even more protracted litigation for the requestor (given that it may be harder to prove the lack of "harm" than that an item requested is not an "intelligence or investigative report.").

The plain text of KRS 17.150(2) seems to have been distorted by the appellate litigation in this matter, as initially noted by the Attorney General in its amicus brief. As further mentioned by the Attorney General, this new interpretation has the potential to harm future prosecutions in our Commonwealth if intelligence and investigative reports are subject to public inspection earlier than intended.

The majority's interpretation will change decades of Attorney General guidance, and some of those opinions came after this Court decided *City of Fort Thomas*. See 17-ORD-144, which specifically cites *City of Fort Thomas*, and notes that "[i]nvestigative reports are nearly always withheld from public inspection to protect sources of information and techniques of investigation and also to prevent premature disclosure of the contents to the targets of investigation, which could thwart law enforcement efforts." OAG 83-123.

Most important is the plain text of the law: "Intelligence and investigative reports maintained by criminal justice agencies are subject to public inspection if prosecution is completed or a determination not to prosecute has been made." KRS 17.150(2). As briefed by the Attorney General, by providing a condition for when such reports are subject to public inspection (the language

28

following the "if"), the statute is drained of meaning if these reports are subject to inspection if the condition is not met.

The Attorney General's interpretation would not render a portion of the Open Records Act meaningless. As discussed above, KRS 17.150(2) could not be successfully invoked for most, if not all, of the records requested in this case, as they are not intelligence or investigative reports. The Attorney General points out that KRS 17.150(2) is a much more specific and targeted statute than the pertinent provision of KRS 61, which addresses "[r]ecords" held by "law enforcement agencies." Despite these laws being passed very close in time by the General Assembly, the majority gives no weight to the argument that greater protection was intended for pre-prosecution intelligence and investigative reports (which could distort witness memories or bias jurors).

The Attorney General additionally argues that the exception contained in KRS 17.150(2)(d) is meaningless under the interpretation now adopted by this Court. But perhaps the current result of this litigation is unsurprising given the Court's legitimate concern of not allowing a statute found outside of KRS 61 to improperly circumvent the importance of the Open Records Act (and this Court's related precedent), when in the past the Attorney General and/or law enforcement potentially attempted to apply KRS 17.150 broader than how it reads.

But none of that changes its plain language, and on the issue of whether KRS 17.150(2) can apply to intelligence and investigative reports pre-

prosecution, I believe the Attorney General's interpretation that it can is correct.


COUNSEL FOR APPELLANT, SHIVELY POLICE DEPARTMENT:

Finn Robert Cato
Cato Law Office PLLC

COUNSEL FOR APPELLEE, THE COURIER JOURNAL, INC.:

Jon L. Fleischaker
Michael Patrick Abate
William R. ("Rick") Adams
Kaplan Johnson Abate & Bird LLP

COUNSEL FOR AMICUS, COMMONWEALTH OF KENTUCKY:

Matthew F. Kuhn
Assistant Attorney General

COUNSEL FOR AMICUS, KENTUCKY OPEN GOVERNMENT COALITION, INC.:

John Woods Potter
Amye Bensenhaver